### Flaugh et al. v. Crawford County Commissioners.

*Donald C. Thompson*, for plaintiffs.

*A. Dickson Andrews*, County Solicitor, for defendants.

KENT, P. J., July 1, 1929.—The material facts as agreed upon in the case stated are as follows:

The plaintiffs were the officers who conducted the general election on Nov. 6, 1928, in the 1st Precinct of the 3rd Ward of the City of Meadville, Crawford County, Pennsylvania.

The defendants are, and were at the time mentioned, the duly qualified and acting board of commissioners in and for the said county.

The plaintiffs opened and closed the polls as required by law, and thereafter continued with the counting of the vote cast at said election until 9.15 o'clock A. M. on Nov. 7, 1928, consuming in the performance of their duties twenty-six and one-quarter hours' time.

That there were 927 votes cast and counted in the precinct at the said election.

That for their services as election officers, plaintiffs presented their bill, amounting in the first instance to $71.50, later increasing the amount thereof to $76.50, the same being stated as follows:

*(A)* Compensation for one day............................... $5.00
Compensation based on vote............................ 9.00

$14.00

Five officers, at $14.................................... $70.00
Return judge........................................ 1.50

$71.50

*(B)* Compensation for first day............................. $5.00
Compensation based on vote............................ 9.00

$14.00

Reduced by law to minimum for one day or................ $10.00
Compensation for second day........................... 5.00

$15.00

Five officers, at $15.................................... $75.00
Return judge........................................ 1.50

$76.50

The defendants refused to allow either of said amounts, offering to allow and draw a warrant in the sum of $51.50 in payment for said services, the same being calculated as follows:

Five officers, at $10 (maximum).......................... $50.00
Return judge........................................ 1.50

$51.50

The matter now comes before us on a case stated for opinion in the nature of a special verdict upon the following submission:

"*(A)* If the court be of the opinion, under the above facts, that the maximum compensation due each member of the election board (other than the return judge, who shall receive an additional sum of $1.50 for making a return) is $10, judgment shall be entered thereon accordingly against the plaintiffs and in favor of the defendants in this action, and upon the payment of such a sum as [was] heretofore offered by the Commissioners of Crawford County, to wit, $51.50, the petition for writ of alternative mandamus shall be dissolved [dismissed] by the court, at the cost of the plaintiffs herein.

"*(B)* If the court be of the opinion, under the above facts, that the compensation due each member of the election board (exclusive of the additional compensation of $1.50 due the return judge) is a greater sum than $10, the court shall enter judgment accordingly in favor of the plaintiffs and against the defendants herein, for the amount so found to be due the plaintiffs, with costs."

Reference to the case stated reveals that the contending parties seem to agree that the return judge is entitled to and should receive the additional compensation of $1.50 for making return, as is provided by law. We agree with such conclusion, hereby eliminating this item from our consideration.

The Act of May 5, 1927, P. L. 819, provides:

"Section 1. That the minimum pay of all judges of election, inspectors of election, and clerks appointed by inspectors, except in cities of the first class and counties of the second class, is hereby fixed at *Five Dollars* per day. In any such election district where more than one hundred votes are cast at any

election, the judge and each inspector and clerk shall be paid *One Dollar* for each one hundred ballots or fractional part thereof cast after the first one hundred ballots in addition to the minimum pay herein provided for: *Provided, that Ten Dollars per day shall be the maximum pay allowed under this act."*

This act expressly repeals recent legislation upon the subject of pay for election officers as follows: "Act of July 5, 1917, P. L. 684, and its amendment of May 8, 1919, P. L. 115. And generally all other acts and parts of acts inconsistent therewith."

It would, therefore, clearly appear beyond any peradventure of a doubt that the pay for election officers in Crawford County at the time mentioned in this proceeding, to wit, Nov. 6, 1928, was controlled, fixed and established by said Act of May 5, 1927, at $5 per day, with an addition thereto of $1 for each 100 ballots, or fractional part thereof, cast after the first 100 ballots, with a maximum pay of $10 per day. Hence, we are clearly of the opinion that the pay could not, under any circumstances, exceed the maximum limitation of $10 per day as fixed by said act.

The plaintiffs having presented their bill to the defendants for services rendered, claiming for two days' pay, and the defendants having refused to allow it, we conclude that the real question to be decided is, whether they are legally entitled to pay for two days?

The requisite duties of election officers seem to be well defined by law. They must open the polls at 7 o'clock A. M. and close them at 7 o'clock P. M., receive the ballots cast during this *interim.* When the election or polls are closed, the officers of election shall proceed to count all the votes cast for each candidate voted for, and make a full return of the same, etc. The vote, as soon as counted, shall also be publicly and fully declared to the citizens present and posted, etc. All judges shall deliver returns, together with return-sheet, as required by law.

Election officers are both elective and appointive, and it is our opinion that the prescribed duties are familiar to all citizens and voters; at least they should be; and when an officer, either elected or appointed, qualifies and undertakes the performance thereof, it is fair to presume that he does so in response to the public service he owes the community, the State and the Nation, and this assumption of duty [is] without regard to the terms and conditions of payment. He is not concerned in whether the same is on a time basis or for a particular service rendered. His interest is in conducting the election, and to conduct an election means to execute all the duties connected with it required by law. His duties are continuous until discharged by full performance. They are not measured by any division of time, natural or artificial. They begin with the opening of the polls and end when the last vote is counted and a full return made out.

Did the legislature contemplate and intend, by the passage of the Act of 1927, to establish a system of payment for election officers on a time (per diem) basis, or was it intended to compensate such officers for a particular service rendered, without reference to the time consumed and occupied?

Counsel agree that no precedent construing the Act of May 5, 1927, in respect to the amount of compensation, can be found. We partially agree with this statement, as we are unable to find any decision of our appellate courts bearing upon the question. When such a state exists, then we look to other methods and deductions for guidance and solution. This we have done in the instant case, with the result that some precedent is found, not only in the laws themselves, both general and special, but as well in the common

custom established thereunder, and in practice, so far as we are able to learn, generally throughout the Commonwealth, together with a few opinions of our lower courts.

A careful review and study of the laws enacted from the year 1839 down to the present time clearly reveals that the legislative intent was to compensate for the particular service rendered, without reference to the time occupied. In this connection, we desire to call attention to both general and special legislation upon the subject, which, in our opinion, casts considerable light upon the legislative intent in the passage of the Act of 1927.

General, as follows: The Act of July 2, 1839, § 92, P. L. 519, provides: That "every judge, inspector and clerk as aforesaid shall receive the sum of $1.50 for every day employed in the duties required of him by law in conducting the general, special and township elections."

This act was interpreted by Barnett, P. J., Nov. 6, 1888, in the case of Bratton et al. v. Perry County, 6 Pa. C. C. Reps. 62, as follows: "By the Act of July 2, 1839, section 92, providing that every judge, inspector and clerk shall receive a certain sum each for every day employed in the duties required of him by law in conducting the general, special or township elections, the legislature intended to compensate for the particular service rendered, without reference to the time occupied, and no additional compensation can be allowed where the officers are engaged more than one day. This intention is fixed by the legislature providing compensation to the judge of election for delivering the return on the day following the election and by provisions of local acts compensating election officers for extra time."

Also, in the case of Salter v. The County, 1 Phila. 255, King, P. J. says: "To conduct an election means to execute all the duties connected with it required by law. These duties form a whole; and when a present sum is allowed for an entire public service, such public service cannot be sub-divided into parts and separate compensations be allowed for each. It is for the service that the compensation is allowed, not for the quantities of time employed in its execution. The law is express, its intentions are clear, and this intention is best consummated by permitting it to speak for itself."

The Act of June 24, 1895, P. L. 237, provides that "The pay of judges and inspectors at all elections . . . shall be $3.50 each at each election so held, without regard to time, and the pay of the several clerks to each election board shall be $3.00 each, without regard to time. . . ."

The Act of April 16, 1903, P. L. 220, provides that "The pay of the judges and inspectors and several clerks to each election board . . . shall be $3.50 at each election so held, without regard to time. . . ."

The Act of June 27, 1913, P. L. 632, provides that "The pay of judges, inspectors and clerks at all elections to be held within this Commonwealth shall be $5.00 each for all services rendered in the conducting of each election. . . ."

The Act of July 5, 1917, P. L. 684, provides that "The minimum pay of all election officers is hereby fixed at $5.00 per day. In any such election district in which more than 250 ballots are cast at any election, each election officer shall be paid for each 100 ballots or fractional part thereof cast over the first 250 ballots, in addition to the minimum pay herein provided for."

The Act of May 8, 1919, P. L. 115, amending the Act of July 5, 1917, provides that "The minimum pay of all judges of election, inspectors and clerks appointed by inspectors is hereby fixed at $5.00 per day. In any such election district in which more than 250 ballots are cast at any election, each judge, inspector and clerk shall be paid $1.00 for each 100 ballots or fractional part

thereof cast after the first 250 ballots, in addition to the minimum pay herein provided for."

Special legislation, applying to certain counties, as follows: The Act of of Jan. 25, 1853, P. L. 8, provides that election officers in Carbon County, each "shall receive the sum of $1.50 for each general, special or township election, . . . and no extra time or service other than the mileage to return judges shall be paid, etc."

The Act of March 25, 1868, P. L. 480, provides that the pay of election officers in Clearfield County, "in the district polling less than 200 votes, shall be $2.00, and any districts polling more than 200 votes $2.50."

The Act of April 9, 1869, P. L. 792, provides that "the pay of officers and clerks of the Board of Election in and for the County of Susquehanna shall be $2.00 per day, and every board that receives more than 200 votes shall be allowed for a day and a-half services."

The Act of April 15, 1869, P. L. 982, makes the pay of election officers in Northampton County "$3.00 per day in all cases where the number of votes polled shall be under 500, and in all cases where the votes polled shall be 500 and upwards, the said officers shall be entitled to $4.00 per day."

The Act of March 13, 1873, P. L. 285, fixes the pay of election officers in Lycoming County "at the rate of $2.50 per day, to be computed from the opening to the closing of the polls, and 25 cents per hour for each additional hour they may be necessarily engaged in counting the votes and making out the returns after the polls are closed."

Considering the Act of May, 5, 1927, P. L. 819, the legislative intent seems to be clearly expressed by the very wording of the act. Had the legislature intended that election officers should receive a per diem compensation, why require the judge to deliver the return on the next day after the election, when that next day was employed in counting the vote? Why compensate the judge for delivering the return when that day has already been included in the compensation for duties required of him by law? Why were the hours constituting an election day not clearly set forth, either as twenty-four, twelve or possibly eight hours, or some other definite time fixed as constituting an election day? On the other hand, the act having fixed the minimum compensation at $5 per day, it seems equally clear from the wording of the act, and reasonable to presume, that the legislature contemplated that in some districts more time would be consumed in the performance of the duties required than in others. Hence, the provision in the act for additional pay was provided for upon a basis of the number of votes cast in excess of the first 100 votes, limiting such additional compensation to the sum of $10 per day.

Considering this act in connection with former legislation, both general and special, upon the subject, the custom established thereunder and the opinions above referred to, we are of the opinion that the intent of the legislature was not to change the prevailing custom of compensating for services rendered to a per diem basis; that such a change would be contrary to and against public policy, in that it would tend to invite the use of unnecessary time in the performance of the required duties., and thereby so greatly increase the cost of holding elections that same might become prohibitive.

Considering the statements as filed by the plaintiffs in the instant case, we are clearly of the opinion that the one marked (A) cannot be considered, as there is no legal authority sustaining the same; that the one marked (B) cannot be sustained for the reason herein expressed, that the law provides for compensation for services rendered, rather than upon a per diem basis.

After careful consideration of all questions and matters submitted in the instant case, we are of the opinion that the plaintiffs are by law entitled to but one day's pay at the maximum amount of $10 for each election officer, together with the additional amount of $1.50 to the judge for making and filing returns, and we hereby state same as follows:

Five officers, at $10 (maximum) .......................... $50.00
Return judge ........................................... 1.50
                                                         _____
    Total ............................................. $51.50

*Order.*—Now, July 1, 1929, judgment is hereby entered in favor of the defendants, and the petition for writ of alternative mandamus is hereby dismissed, at the costs of said plaintiffs.

From J. Perry Eckels, Meadville, Pa.